UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X
                                                    ::
FRANCISCO ALMONTE and ANTHONY BARONE,               :         03 CV 5078 (ARR)

                        Plaintiffs,                 :         <u>NOT FOR</u>
                                                    :         <u>PUBLICATION</u>
            -against-                               :
                                                    :         <u>OPINION AND ORDER</u>
CITY OF NEW YORK, POLICE OFFICER TERENCE            :
O'HARA, TAX REG #9228985, LIEUTENANT JAMES          :
CAHILL and UNIDENTIFIED NEW YORK CITY               :
POLICE OFFICERS, EMPLOYEES, and AGENTS,             X

                        Defendants.

----------------------------------------------------------------

ROSS, United States District Judge:

Plaintiffs Francisco Almonte ("Almonte") and Anthony Barone ("Barone") brought the

instant action pursuant to 42 U.S.C. § 1983, and the laws of New York state, against the

defendants City of New York, Sergeant Terence O'Hara ("O'Hara"), and Lieutenant James

Cahill ("Cahill") alleging a number of claims arising from the events of July 8, 2002. As against

all defendants, plaintiffs claim in the Second Amended Complaint that: (1) they were falsely

arrested; (2) they were unlawfully searched; (3) they were subjected to abuse of process; (4) they

suffered intentional infliction of emotional distress; and (5) their privacy rights were violated.[1]

Plaintiffs also allege that Sergeant O'Hara and Lieutenant Cahill failed to intercede to prevent the

deprivation of their rights and that the City of New York has a policy and practice that led to the

---

[1]The court understands plaintiffs' claim that their privacy rights were violated to be
duplicative of their Fourth Amendment false arrest and unlawful search claims and, as such, does
not address the privacy rights claim apart from its treatment of those claims.

1

violation of their rights. Plaintiff Almonte brings a number of other claims under state law, including claims for libel and slander, conspiracy, trespass, negligent hiring and retention, and general negligence.

Defendants' motion for summary judgment is currently before the court. In response to defendants' motion, plaintiffs have narrowed the claims that the court is to consider. Specifically, plaintiffs concede that they have no claim against the defendants for unlawful search and intentional infliction of emotional distress and that they have no claim against the City of New York on the theory that it has a policy and practice that led to the violation of their rights. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 4, 6.

Defendants have moved for summary judgment arguing that: (1) there was probable cause for the arrest of both plaintiffs; (2) defendants O'Hara and Cahill are entitled to qualified immunity with respect to the federal law claims; (3) defendants O'Hara and Cahill are entitled to good faith immunity with respect to Almonte's state law claims; (4) plaintiffs cannot establish a claim for abuse of process; (5) plaintiffs cannot establish that O'Hara and Cahill failed to intercede; (6) defendant City of New York is entitled to governmental immunity; and (7) plaintiffs have no viable claims under state law. Because there is no genuine issue of material fact, the court grants defendants' motion for summary judgment.

## BACKGROUND

The following facts are undisputed unless otherwise noted. On the evening of July 8, 2002, Francisco Almonte and Anthony Barone traveled to the Marina at Flushing Meadow Park with Jose Ramirez. At approximately 10:57 p.m., while they were in the park, Almonte pepper

sprayed Mr. Ramirez in the face and eyes and then stabbed him with a knife near his heart. Almonte testified at his deposition that he stabbed Mr. Ramirez there because "[t]hat's the only spot that I just saw that was opened and I don't know, I was actually aiming for the heart because I wanted to kill him because I thought they [Mr. Ramirez and his friends] were going to take my life. I didn't think that I was going to get out of there alive so I was like let me just take somebody with me." Defendants' Ex. M at 149. Mr. Ramirez was not holding any weapons when Almonte stabbed him, and neither Almonte nor Barone observed Mr. Ramirez or any other person with a gun or other weapon when Mr. Ramirez was stabbed.

After stabbing Mr. Ramirez, Almonte left the park with Barone. As they were leaving, plaintiffs ran by a park bench where a man and woman were sitting and asked them to call 911 because someone had just been stabbed. Upon leaving the park, Almonte and Barone ran to a nearby Mobile Gas Station. Plaintiffs went to the pay phone at the gas station and Almonte called 911. At approximately 11:13 p.m., with Barone standing next to him, Almonte told the 911 operator that he had just stabbed a man in the Marina at Flushing Meadow Park. While Almonte was speaking with the operator, Barone told him to "get off the phone. Let's get out of here. Forget this." Defendant's Ex. N at 96.

According to a police report filed in connection with the arrest, the first officers to arrive at the park were informed by witnesses that two Latino men had an altercation with the victim that resulted in his stabbing. Defendant's Ex. H. Shortly thereafter, defendants Sergeant Terrence O'Hara and Lieutenant James Cahill were en route, responding to the stabbing at the Marina, when they were notified that a male was on the telephone with a 911 operator stating that he had stabbed the person. The defendants were further notified that the male was using a pay

3

phone at a Mobile Gas Station near the park. Almonte was still speaking with the 911 operator, with Barone standing beside him, when O'Hara and Cahill arrived at the gas station. While defendants contend that Almonte and Barone voluntarily put their hands behind their heads and got on their knees, plaintiffs allege that they did so only after O'Hara and Cahill drew their weapons and told Almonte to drop the telephone. While the parties agree that Almonte told the officers he had pepper sprayed and stabbed Mr. Ramirez, Almonte contends that he only spoke to the officers after being arrested, explaining that he had acted in self-defense. Defendants O'Hara and Cahill placed Almonte and Barone under arrest, conducting a pat down and pocket search of both plaintiffs.

Following the arrest, at the precinct, witnesses identified Almonte and Barone as having been involved in the stabbing of Mr. Ramirez. Defendants' Ex. O ¶ 14, Ex. P ¶ 14. Pepper spray and a knife were recovered from the scene of the stabbing. Almonte was charged with attempted murder, assault, and criminal possession of a weapon. Barone was charged with attempted murder and assault.

## DISCUSSION

### I.    Standard for Summary Judgment

Under Rule 56, summary judgment is proper if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc.56(c). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome of the litigation if application of the relevant substantive law requires their determination. See Anderson v. Liberty

4

Lobby, 477 U.S. 242, 248 (1986). The moving party has the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Cartrett, 477 U.S. 317, 323 (1986). The substantive law determines the facts that are material to the outcome of a particular litigation. See Anderson, 477 U.S. at 250; Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).

If the moving party meets its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). The non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48. Only when it is apparent that no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight" should summary judgment be granted. Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.2d 1219, 1223 (2d Cir. 1994).

II.     Section 1983 Claims

Defendants O'Hara and Cahill have asserted the defense, against plaintiffs' federal law claims, that probable cause existed to arrest Almonte and Barone and, in the alternative, that they

are entitled to qualified immunity. Probable cause to arrest exists where the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). The existence of probable cause is a complete defense to a claim for false arrest. Id. at 85.

Even in the absence of probable cause, law enforcement officers may still be entitled to qualified immunity from suit. Escalara v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). The Supreme Court has stated that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Provost v. City of Newburgh, 262 F.3d 146, 160 (2d Cir. 2001) (internal quotations and citation omitted). Under Second Circuit precedent, an officer is immune from suit in an unlawful arrest action if he has "arguable probable cause." Id. at 160. "Arguable probable cause" exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalara, 361 F.3d at 743 (internal quotation marks and citations omitted). The Second Circuit has described this as a "forgiving standard" that "protects all but the plainly incompetent or those who knowingly violate the law." Provost, 262 F.3d at 160 (internal quotation marks and citation omitted).

The court will address O'Hara and Cahill's defenses with respect to each of plaintiffs' federal law claims.

6

A.    False Arrest

In the instant case, it is undisputed that plaintiff Almonte admitted stabbing Ramirez and uncontroverted evidence indicates that witnesses told police officers that both Almonte and Barone were involved in the stabbing before the men were arrested. Notwithstanding these undisputed facts, the plaintiffs contend that there was not probable cause for their arrest and that the officers are not entitled to qualified immunity.

Plaintiff Almonte argues that he should not have been arrested because he acted in self-defense and reported the stabbing. Almonte contends that "[t]o allow an arrest on [his] statement would allow the arrest of everyone who tells the truth to the police who has ever defended him or herself." Plaintiffs' Opposition Brief at 2. The crux of Almonte's argument is that, because he reported the stabbing, telling the officers that he had acted in self-defense, the officers did not have probable cause to arrest him. This argument is insupportable. The Second Circuit has stated that a police officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997). The court has stated further that making the probable cause determination does not require or even permit police officers "to sit as prosecutor, judge, or jury" and that "[i]t is up to the factfinder to determine whether a defendant's story holds water, not the arresting officer." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). In light of Almonte's admission to the police that he stabbed Ramirez, the court finds that there is no genuine issue of material fact upon which a reasonable juror could conclude that there was no probable cause to arrest him. That O'Hara and Cahill are also entitled to qualified immunity is beyond question.

7

Barone argues that the information available to defendants O'Hara and Cahill at the time

of Barone's arrest amounted to nothing more than a "reasonable inference that Barone was

present" during the stabbing of Mr. Ramirez and that "mere presence" is insufficient to establish

probable cause. Plaintiff's Opposition Brief at 3. Barone essentially repeats this argument in

addressing defendants' qualified immunity defense, arguing that the defendants had no

"particularized suspicion" that he had committed a crime. Prior to Barone's arrest, however, law

enforcement officers had been informed by witnesses that two male Latinos had been involved in

an altercation with the victim leading to his stabbing.[2] Defendants' Ex. H. Shortly thereafter,

defendants O'Hara and Cahill were directed to respond to the gas station where Almonte was still

speaking with the 911 operator from a pay phone, admitting that he had stabbed Mr. Ramirez.

The defendants found Almonte and Barone together and arrested them. In light of the foregoing,

the court finds that there is no genuine issue of material fact upon which a reasonable juror could

conclude that there was no probable cause to arrest Barone. At the very least, there is no genuine

issue of material fact upon which a reasonable juror could conclude that the arresting officers

lacked "arguable probable cause."

B.    Duty to Intercede

A police officer "has an affirmative duty to intercede on the behalf of a citizen whose

constitutional rights are being violated in his presence by other officers." O'Neill v. Krzeminski,

---

[2]The court notes that, under Supreme Court precedent, "where law enforcement
authorities are collaborating in an investigation, . . . the knowledge of one is presumed shared by
all," Illinois v. Andreas, 463 U.S. 765, 772 n.5 (1982), and the existence of probable cause is
therefore determined with reference to the collective knowledge of all officers involved in the
investigation. See Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003) (explaining the
collective knowledge doctrine).

839 F.2d 9, 11 (2d Cir. 1988). Failure to intercede to prevent an unlawful arrest can be grounds

for § 1983 liability. Id. Where there is no violation of constitutional rights. however. there is no

duty to intercede. As analyzed above, the defendants had probable cause to arrest both Almonte

and Barone. As a result, neither O'Hara nor Cahill had a duty to intercede.

Even in the absence of probable cause, in order to recover on this ground a plaintiff must

overcome the hurdle of qualified immunity. "A police officer cannot be held liable in damages

for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly

established statutory or constitutional rights of which a reasonable person would have known."

Ricciuti, 124 F.3d at 129 (internal quotation marks and citation omitted). "[T]he failure to

intercede must be under circumstances making it objectively unreasonable for him to believe that

his fellow officers' conduct did not violate those rights." Id. (internal quotation marks and

citation omitted). Moreover, "[t]o obtain summary judgment on qualified immunity grounds in

connection with a claim of failure to intercede to prevent an illegal arrest, a defendant must show

that the only result a fair jury could reach is that reasonably competent police officers, faced with

the information available to the non-intervening officer at the time of the arrest, could disagree

about the legality of the arrest." Id. (citation omitted). Defendants have clearly made such a

showing.

C.     Abuse of Process

Section 1983 liability may lie for abuse of process. Cook v. Sheldon, 41 F.3d 73, 80 (2d

Cir. 1994). To prove abuse of process the plaintiffs must show: (1) regularly issued process

compelling the performance or forbearance of some prescribed act, (2) the person activating the

process must have been motivated to do harm without economic or social excuse or justification,

and (3) the person activating the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process. Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003). "In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action." Id. at 77 (emphasis in original). The existence of probable cause offers a complete defense to a claim of abuse of process. Hickey v. City of New York, No. 01 Civ. 6506 (GEL), 2004 WL 2724079, *7 (S.D.N.Y. Nov. 29, 2004) (citing Granato v. City of New York, No. 98 Civ. 667 (ILG), 1999 WL 1129611, *7 (E.D.N.Y. Oct. 18, 1999)). In the instant case, having determined that no reasonable juror could conclude that no probable cause existed for either Almonte or Barone's arrest, summary judgment is granted on this claim.

III.     Pendent State Law Claims

Plaintiffs also assert a number of state law claims against the defendants. The sole basis for subject matter jurisdiction over the state law claims being the existence of federal law claims under section 1983, which have now been dismissed, the court declines to exercise jurisdiction over the pendent state law claims and dismisses them without prejudice. Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001).

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment and dismisses the plaintiffs' complaint in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

_____
Allyne R. Ross
United States District Judge

Dated: May 20, 2005
       Brooklyn, New York

SERVICE LIST:

Attorney for Plaintiffs
Thomas G. Sheehan
Cheda & Sheehan
76-03 Roosevelt Avenue
Jackson Heights, NY 11372

Attorneys for Defendants
Concepcion A. Montoya
Corporation Counsel of the City of NY
100 Church Street - Rm 3 - 183
New York, NY 10007

Mona Vivian Najib
New York City Law Department
100 Church Street
New York, NY 10007